IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VAN IRION, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:25-cv-00001 |
| | ) Judge Aleta A. Trauger |
| TRAVIS MCDONOUGH, LEANN WILSON, DOE 1, and TENNESSEE BOARD OF PROFESSIONAL RESPONSIBILITY, | ) |
| Defendants. | ) |

## MEMORANDUM

In his Second Amended Complaint ("SAC"), the operative pleading, plaintiff Van Irion seeks "declaratory relief, injunctive relief, compensatory damages, and punitive damages" against defendants Travis McDonough, Chief Judge for the United States District Court for the Eastern District of Tennessee ("EDTN"), LeAnna Wilson (named in the SAC as "Leann"), Clerk of Court of the EDTN, "Doe 1," and the Tennessee Board of Professional Responsibility ("TBPR"). Now before the court are two separate Motions to Dismiss filed respectively by the TBPR (Doc. No. 47) and by McDonough and Wilson (Doc. No. 57). For the reasons set forth herein, both motions will be granted, and the remaining claims will be dismissed without prejudice.

### I. BACKGROUND

The original Complaint and First Amended Complaint named as defendants the EDTN and the TBPR. (Doc. Nos. 1, 22.) Following dismissal of the EDTN on the grounds of sovereign immunity (Doc. Nos. 38, 39), Irion sought and was granted leave to amend his pleading again (Doc. Nos. 44, 45). The SAC, now the operative pleading, removed the EDTN as a defendant,

maintained the claim against the TBPR, and added a claim against McDonough, Wilson, and "Doe 1," the latter of whom has never been identified or served.

According to the SAC, Irion is an attorney licensed in Tennessee who resides in Knox County, in the federal Eastern District of Tennessee. (SAC ¶ 1.) He has been admitted to practice law before the EDTN and this court, among others. (*Id.* ¶¶ 3–5.)

The putative basis for this lawsuit is an Order to Show Cause ("OSC") issued by Judge McDonough on August 8, 2024, initiating disciplinary proceedings against Irion in the EDTN. Show Cause Order, *In re: Irion*, No 1:24-dm-00007-TRM-CHS (E.D. Tenn. Aug. 8, 2024), ECF No. 1. (*See* SAC ¶ 15; *see also* Doc. No. 64-2.) Irion "believes that said disciplinary matter was filed by Judge McDonough in retaliation against Irion." (SAC ¶ 15.) In support of this "belief," the plaintiff alleges that McDonough, assisted by Wilson and Doe 1, illegally altered the court's record. He knows an alteration occurred because Document No. 1 of the disciplinary matter in the EDTN, Case No. 1:24-dm-007, as shown by the footer automatically applied by the court's electronic filing system, begins on "PageID#9," meaning that "Page ID#s 1–8 are completely missing." (SAC ¶ 80.) Irion complains that neither he nor his attorney has ever seen the "first version of the OSC that initiated his disciplinary proceeding," "can never know what that initial disciplinary document said," and "will never know why TNED was desperate not to allow Irion to see that first version of the initiating OSC document." (*Id.* ¶ 82.) His belief that the document was substituted is substantiated by a notation on the docket stating, "Initial document replaced on 8/8/2024." (*Id.* ¶ 84.)

The plaintiff speculates that the docket was manipulated by McDonough in order to "misrepresent the date and time upon which the initiating document was first filed." (*Id.* ¶ 86.) The plaintiff believes that the substitution was in retaliation for his having filed a complaint with the

Sixth Circuit Court of Appeals, allegedly also on August 8, 2024, accusing McDonough of unlawful and unethical conduct. (*Id.*) Alternatively, the plaintiff speculates that the original OSC was altered to "eliminate information . . . that would reflect poorly upon McDonough, and/or exculpate the plaintiff." (*Id.* ¶ 87; *see also id.* ¶ 96.) Irion claims to have evidence that the third version of the OSC, the one that actually appears on the docket, was filed "weeks" after August 8, 2024 rather than on August 8, 2024.

Irion apparently filed another complaint against McDonough with the Sixth Circuit Court of Appeals based on the substitution of the OSC on the docket. This complaint was dismissed in an opinion authored by Sixth Circuit Court of Appeals Chief Judge Jeffrey Sutton. Irion quotes Judge Sutton's opinion at length, which explains his factual findings after investigating Irion's allegations about the substitution of the OSC:

> On the morning of August 8, 2024, the Court's administrative lawyer entered the show-cause order. When confirming that the document was successfully uploaded, the administrative lawyer noticed that the case number on the order was incorrect. She quickly replaced the first show-cause order with a second document containing the correct case number. When the subject judge viewed the document a few hours later, he observed that the replaced document contained metadata visible to those with access to the docket. The subject judge alerted a different staff member, who scrubbed the metadata from the document and again replaced the show-cause order with a metadata-free copy. The docket shows that the original document was replaced on August 8. Because the document was twice replaced, the operative show-cause order begins at PageID#9, and not PageID#1.

(*Id.* ¶ 97; *see also* Doc. No. 63-1 at .)

While appearing to adopt Judge Sutton's findings, insofar as they (according to Irion) constitute "an admission of unlawful alteration and deletion of Federal Court Records," Irion also claims that a version of the OSC that begins on PageID#5 was served upon him at his residence via certified mail and that he and "other witnesses accessed the PageID#5 version of the OSC on

TNED's ECF system after August 25, 2024," meaning that it could not have been filed on August 8, as McDonough claims. (SAC ¶¶ 103, 105.)[1]

Based on these allegations, the plaintiff continues to maintain that McDonough caused the first eight pages of the docket to be deleted to "hide his retaliation" against Irion and that McDonough unlawfully directed Wilson "and/or Doe 1" to "permanently alter and destroy documents of Record" filed through the court's electronic filing system. (*Id.* ¶¶ 125–26.) He asserts that Wilson "violated Federal law by permanently altering and destroying documents of Record" filed on the court's electronic docket. (*Id.* ¶ 127.)

The SAC's First, Second, Third, and Fourth "Causes of Action" seek judicial declarations that TNED Local Rules 3.2 and 83.6, and 83.7 are unconstitutional facially and/or as applied. (SAC

---

[1] On February 20, 2025, Judge Sutton dismissed Irion's complaint that was based on the allegedly improper replacement of the OSC on the docket, finding generally that the plaintiff's allegations "cannot survive the Rule 11 inquiry." (Doc. No. 63-1 at 6.) More specifically, Judge Sutton found that Irion was

> simply wrong to suggest that the subject judge initiated these [disciplinary] proceedings only after [Irion] complained about the subject judge's conduct in his *en banc* petition with the Sixth Circuit. All the available evidence shows just the opposite: that the court docketed the show-cause order on August 8, a day before the complainant filed his petition. Indeed, the U.S. Postal Service records show that the clerk's office sent the complainant the show-cause order by certified mail on August 8. The complainant's contrary theory—that the subject judge issued the show-cause order to cover up his retaliation . . . —is contradicted by objective evidence. . . .
>
> . . . .
>
> The complainant's one claim specific to the subject judge—that he improperly replaced a document on the docket of the disciplinary proceeding—similarly fails. . . . Even if such decisions could be the basis for misconduct, the decision to remove the document's metadata (while adding a docket notation that the document had been replaced) does not constitute misconduct. As the subject judge notes in his response, this alteration to the document's metadata had no effect on the paper copy that the court mailed to the complainant. This allegation warrants dismissal as attacking the merits of the subject judge's decisions and lacking sufficient evidence to raise an inference that misconduct has occurred.

(*Id.* at 5–6.)

at 34–39.)[2] The Fifth Cause of Action seeks a declaration that the TNED deleted or altered court records in the disciplinary action and that such deletions and alterations violated federal law and violated Irion's due process rights. (*Id.* at 39–41.) All of these "causes of action" were also set forth in the First Amended Complaint, which did not name McDonough and Wilson as defendants. (Doc. No. 22 at 30–37, 39–40.) Insofar as these claims were aimed at the EDTN, then named as a defendant, they were dismissed on the grounds of the EDTN's sovereign immunity. (*See* Doc. No. 39.) Their continued inclusion in the SAC, however, did not serve to reinstate the claims, which remain dismissed.

The sole cause of action in the SAC asserted against McDonough and Wilson is tacked onto the end of the pleading, as the Eighth Cause of Action, characterized as a "*Bivens* Claim for Denial of Due Process." (SAC at 43.) The plaintiff asserts that McDonough and Wilson, "acting under color of Federal law, intentionally deprived the plaintiff of his right to unbiased due process under the 5th Amendment to the U.S. Constitution by unlawfully deleting pageID#s1–4 in case number 1:24-dm-007; and by, several weeks later, unlawfully deleting pageID#s5–8 in said case."

---

[2] EDTN Local Rule 3.2(c) provides for the random assignment of judges to new cases, and Rule 3.2(d) provides exceptions to such randomized assignment. (*See* SAC ¶¶ 76–77.)

Rule 83.6, as amended in 2025 and as applied by Judge McDonough in the underlying disciplinary proceeding, reads:

> The minimum standards of professional conduct before this Court include the Rules of Professional Conduct adopted by the Supreme Court of Tennessee insofar as they relate to matters within the jurisdiction of this Court. Such rules are not exhaustive of the ethical standards the Court expects attorneys to meet. The Court has the obligation and responsibility to interpret and apply the RPC and other rules and standards of conduct without being bound by the decisions of Tennessee courts, other courts, or agencies.

EDTN L.R. 83.6 (Revised April 23, 2025). *See also* Memorandum Opinion and Order 3–4, *In re: Irion*, No. 1:24-dm-7 (E.D. Tenn. Aug. 4, 2025), ECF No. 114.

Rule 83.7 pertains to the procedures for imposing attorney discipline and specifically authorizes the district's chief judge to initiate formal disciplinary proceedings by "issuance of an order to show case signed by the Chief Judge." EDTN L.R. 83.7(b).

(*Id.* ¶ 222.) The plaintiff seeks "injunctive and declaratory relief [and] damages, including nominal and/or punitive damages." (*Id.*)

The SAC does not state any substantive factual allegations regarding the TBPR, but it asserts that the TBPR is a "necessary party" under Federal Rule of Civil Procedure 19. The sole cause of action asserted against it, the SAC's Sixth Cause of Action, asks the court to find, as a factual matter, that "TNED's actions in prosecuting the disciplinary action 1:24-dm-007 against attorney Irion included unconstitutional actions that deprived attorney Irion of his due process rights." (SAC ¶ 215.) Irion asks the court to issue a declaration, based on that putative finding, that the TBPR's "application of Tennessee Supreme Court Rule 9 §§ 25.4(a) and 25.5 in any disciplinary matter against attorney Irion . . . would violate attorney Irion's right to due process as protected by the United States Constitution. (*Id.* ¶ 216.)

The two Motions to Dismiss were filed in response to the SAC. The court takes judicial notice that, on the day after the judicial defendants filed their present motion, Judge McDonough issued an eighty-page ruling in the underlying disciplinary action against Irion, finding by clear and convincing evidence that Irion had violated Rules 3.3(a), 8.4(c) and 8.4(d) of the Tennessee Rules of Professional Conduct and ordering disciplinary action. Memorandum Opinion and Order, *In re: Irion*, No. 1:24-dm-00007-TRM-CHS (E.D. Tenn. Aug. 4, 2025), ECF No. 114. Following the denial of his Motion to Alter or Amend Judgment, Irion appealed the ruling to the Sixth Circuit Court of Appeals on September 30, 2025, where his appeal is docketed as Case No. 25-5874.

## II.   THE JUDICIAL DEFENDANTS' MOTION

In support of their Motion to Dismiss, McDonough and Wilson (collectively referred to in this section of the Memorandum as "defendants" or "judicial defendants") argue that (1) McDonough has absolute judicial immunity and Wilson has absolute quasi-judicial immunity from suit based on the claim asserted in this case; (2) in the alternative, they are entitled to qualified

immunity; (3) the Supreme Court has never authorized expanding *Bivens* to imply a cause of action by a disgruntled litigant against judicial officers for alleged due process violations, and this court should decline to extend *Bivens* this far; (4) insofar as the plaintiff seeks declaratory relief, *Bivens* does not provide a remedy. (*See generally* Doc. No. 58.) The plaintiff opposes the motion (Doc. No. 63), and the defendants filed a Reply in further support thereof (Doc. No. 64).

Regarding the damages claim against the defendants, the court finds it unnecessary to wade far into the *Bivens* quagmire, because it is clear that the defendants have absolute immunity from the damages claim asserted against them in this case. The Supreme Court has repeatedly confirmed that federal judges are absolutely immune from lawsuits grounded in the performance of official judicial acts. *See Forrester v. White*, 484 U.S. 219, 225 (1988); *Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978); *see also Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("[J]udges generally have absolute immunity from suits for money damages for their judicial actions," which "even allegations of bad faith or malice cannot overcome."). Such immunity extends to court officers, such as Clerks of Court, who enjoy "absolute immunity from suit on claims arising out of the performance of . . . quasi-judicial functions." *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (citing *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (municipal court clerk)).

Judicial immunity will not apply in only two circumstances: (1) where the challenged actions are "nonjudicial," that is, they were not taken in the judge's "judicial capacity," and (2) where the judge acted "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12, (1991) (citations omitted).

While the plaintiff asserts that the acts at issue—removing and replacing a docketed order first to correct the docket number and then to remove metadata from the order—constitute non-judicial, administrative tasks for which the defendants are not entitled to absolute immunity, his

argument fails because the correction and replacement of the OSC are inextricably intertwined with the judicial act of entering the OSC and thus initiating disciplinary proceedings against Irion. Even if the court focuses on the ministerial tasks of checking and then correcting the OSC after it had been docketed, these tasks pertained to the management of the case against Irion, making them judicial in nature. *Accord Dekom v. Fannie Mae*, 846 F. App'x 14, 18 (2d Cir. 2021) ("Insofar as Dekom asserts that he sues some of these judges and their staffs for non-judicial, administrative tasks, his argument fails because the actions all pertained to the management of his foreclosure case and appeal, thus making them judicial in nature."); *see also Kipen v. Lawson*, 57 F. App'x 691 (6th Cir. 2003) ("Control of the docket is a function for which judges are entitled to absolute immunity." (collecting cases)); *Bliven*, 579 F.3d at 210 ("[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature."); *Rodriguez v. Weprin*, 116 F.3d 62, 66–67 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity."); *Sindram v. Suda*, 986 F.2d 1459, 1460–61 (D.C. Cir. 1993): ("[C]lerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." (collecting cases)). The entry of a particular order on the docket, as well as ensuring the correct docketing of a particular order, in a case over which McDonough himself presided was intimately connected with a particular case and was necessarily judicial in character. The making of *substantive* changes to the OSC would obviously have been an official judicial act; that the changes were minor and non-substantive does not make the nature of the act somehow non-judicial.

Further, the court takes notice that district courts are frequently called upon to correct docketed filings by substituting corrected documents. This is not an unusual occurrence or one that

is outside the scope of a court's ordinary judicial functions. Rather, it is a necessary part of managing the docket and the orderly administration of a case. This is nothing like, for instance, truly administrative acts for which absolute immunity is not afforded, such as hiring, firing, and demoting court employees, *see, e.g.*, *Forrester*, 484 U.S. at 229–30, "compiling general jury lists to affect all future trials"—rather than a particular case—or "promulgating a code of conduct for attorneys" (for which the defendants instead had legislative immunity). *Bliven*, 579 F.3d at 210 (citing *Ex parte Va.*, 100 U.S. 339, 348 (1879); *Supreme Court of Va. v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731, 734 (1980)).

Moreover, even if the actions at issue were considered administrative rather than judicial in nature, a judge performing a discretionary, administrative function is entitled to qualified immunity from suit for civil damages unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Mumford v. Zieba*, 4 F.3d 429, 432 (6th Cir. 1993); *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010). In this case, the plaintiff cannot articulate a constitutional right associated with accessing court documents with incorrect docket numbers or metadata that is not meant to be available to the public, much less a right so clearly established that its "contours . . . were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (citing *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

"Absolute immunity in *Bivens* actions against federal judges has also been extended to requests for injunctive relief." *Kipen*, 57 F. App'x at 691 (citing *Bolin v. Story*, 225 F.3d 1234, 1240-42 (11th Cir. 2000) (collecting cases)). In addition, an injunction against a federal judge requiring action directly related to a judicial proceeding before that judge would necessarily

require *official government* action on the part of the judge, not some action taken in his *individual* capacity. Consequently, "*Bivens* is both inappropriate and unnecessary for claims seeking . . . equitable relief against actions by the federal government. By definition, *Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016). Moreover, here as in *Kipen*, the plaintiff's claim for injunctive relief is moot, because Judge McDonough has already issued a ruling in the underlying disciplinary proceeding. *See Kipen*, 57 F. App'x at 691.

As for the plaintiff's request for a judicial declaration under the Declaratory Judgment Act, whether to grant declaratory relief is entirely discretionary with the court, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (citation omitted). Declaratory relief "is meant to define the legal rights and obligations of the parties in anticipation of some *future* conduct, not simply to proclaim liability for a *past act*." *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008) (emphasis added). The plaintiff seeks a declaration pertaining to Judge McDonough's past actions in initiating the disciplinary action against him, but, as set forth above, Judge McDonough no longer presides over the action because he issued judgment, and the plaintiff appealed to the Sixth Circuit Court of Appeals. In this situation, declaratory relief would not define any relationship or rights between the plaintiff and the defendants. Declaratory relief, therefore, is not warranted.

Finally, irrespective of the other grounds for dismissal, it is abundantly clear from the face of the SAC that the plaintiff's allegations regarding what he believes the uncorrected documents showed and why they were substituted are based on nothing but speculation and conjecture. The

claim against the defendants, including the claim for a declaration, based on the substitution of documents on the docket in order to correct them is utterly frivolous and would be subject to dismissal on this ground as well.

The judicial defendants' Motion to Dismiss will be granted.

### III. THE TBPR'S MOTION

The TBPR argues that the claim against it should be dismissed, presumably under Rule 12(b)(1), on ripeness grounds. (*See* Doc. No. 47-1 at 6 ("Plaintiff presupposes two future events. First, that TNED will impose discipline upon him. Secondly, if TNED disciplines him that, TNBPR will impose reciprocal discipline. Therefore, Plaintiff's arguments are based on mere speculation about future events and are not yet ripe.").)

Irion filed a Response, arguing generally that ripeness in the context of a request for a declaratory judgment does not require "imminent and certain" harm and that the entire "point of the declaratory judgment statute is to grant Federal courts discretion to resolve pure questions of law <u>prior to</u> harm occurring to one party or another." (Doc. No. 53 at 4–5.) He insists that (1) it is practically certain that TNED will discipline Irion within the next week or two" and that, (2) under its "published rules," the TBPR is "certain to deny Irion any hope of avoiding reciprocal discipline by the [TBPR]." (*Id.* at 5.) He further argues that dismissing the claim against the TBPR under the circumstances presented here would impose a significant hardship upon him and that the court should, in the exercise of its discretion, resolve the case. (*Id.* at 8–9.)

As an initial matter, the court notes that the TBPR, a state agency, is absolutely immune from suit. *Accord Morgan v. Bd. of Pro. Resp.*, 63 F.4th 510, 517 (6th Cir. 2023) (recognizing that the TBPR "cannot be sued for injunctive relief here because it is an arm of the state and the state has not waived the Board's sovereign immunity, nor has Congress removed it"). The plaintiff could avoid the application of sovereign immunity if he proceeded under the exception provided

by *Ex parte Young*, 209 U.S. 123 (1908), but, for *Ex parte Young* to apply, "the claimant must explicitly allege that a state official acted in her official capacity." *Id.* (citing *Long v. Tennessee*, 744 F. App'x 945, 946 (6th Cir. 2018), as holding that the plaintiff's "failure to allege an official-capacity claim against a state official prevents him from availing himself of the *Ex parte Young* exception"). The plaintiff has not identified or named as defendants any members of the TBPR in their official capacity, as a result of which *Ex parte Young* does not apply, and sovereign immunity bars the suit against the TBPR.

Perhaps recognizing that it would be relatively simple for the plaintiff to amend his pleading (yet again) to name an appropriate official, the TBPR invokes ripeness instead of sovereign immunity. "The related doctrines of Article III standing and ripeness are both limits on a federal court's ability to hear a case." *Carman v. Yellen*, 112 F.4th 386, 401 (6th Cir. 2024); *see also Doe v. Univ. of Mich.*, 78 F.4th 929, 941 (6th Cir. 2023) "[T]here is unquestionably some overlap between ripeness and standing." (citation omitted)). "The constitutional elements of ripeness encompass traditional parts of the standing inquiry: namely, whether a plaintiff 'is threatened with 'imminent' injury in fact.'" *Carman*, 112 F.4th at 400 (6th Cir. 2024) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)). "If a case is 'dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all,' it is not constitutionally ripe." *Id.* (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam)) (some internal quotation marks omitted).

Only one aspect of this case has proceeded beyond the speculative: Judge McDonough did in fact find that Irion had violated various ethical rules governing Tennessee attorneys' conduct and he did in fact impose discipline. However, that ruling has not been finalized, because Irion's appeal remains pending before the Sixth Circuit Court of Appeals. Therefore, it is still unclear

whether the Sixth Circuit Court of Appeals will affirm or reverse the finding that Irion violated the Tennessee Rules of Professional Conduct. Irion's claim against the TBPR remains contingent upon the Sixth Circuit's upholding Judge McDonough's ruling. As such, it is "dependent on [a] contingent future event[] that may not occur as anticipated, or indeed may not occur at all." *Id.* Consequently, Irion's request for a declaration that the TBPR's imposition of Tennessee Supreme Court Rule 9 §§ 24.4(a) and 25.5 would violate his right to due process is not ripe.

The court further notes that, as articulated in the FAC, the plaintiff's claim against the TBPR is also contingent on a finding by this court that the "TNED's actions in prosecuting the disciplinary action 1:24-dm-007 against attorney Iron included unconstitutional actions that deprived attorney Irion of his due process rights." (FAC ¶ 215(a).) Aside from the problem presented by Iron's asking this court to conduct what amounts to an appellate review of a decision by a sister court, Irion has in fact appealed that finding, and his appellate brief in the Sixth Circuit argues pervasively that his due process rights were violated by the proceedings before McDonough. *See generally* Brief of the Appellant/Respondent, *In re Irion*, No. 25-5874 (6th Cir. Jan. 5, 2026), Doc. No. 19 (in which the term "due process" appears more than twenty times). It remains to be seen whether the Sixth Circuit will be persuaded by Irion's due process arguments. If that court reverses Irion's disciplinary conviction, then his claim against the TBPR will be rendered moot—which is precisely why his claim against the TBPR is not yet ripe. Regardless, the Sixth Circuit Court of Appeals is the body with jurisdiction to determine whether Irion's disciplinary proceedings violated his right to due process, making his claim not fit for review in this court at this juncture.

In sum, this claim, too, will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth herein, both Motions to Dismiss will be granted, and the claims against the remaining defendants will be dismissed without prejudice. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge